ROBERT T. MOXLEY #5-1726
ROBERT T. MOXLEY, P.C.
2718 O'Neil Avenue
Post Office Box 565
Cheyenne, Wyoming 82003-0565
(307) 632-1112
fax: (307) 632-0401
Vaccinelawyer@gmail.com
ATTORNEY FOR PLAINTIFFS

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2021 JUL 19  PM 12: 00

MARGARET BOTKINS, CLERK
CHEYENNE

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| BRETT HEMRY, Individually and as Next Friend of F.M.H.,  GENALYN HEMRY, Individually and as Next Friend of F. M. H., and F.M.H., a minor child, | ) ) ) ) ) | 21 CV 136-J |
| Plaintiffs, | ) ) | |
| -vs.- | ) ) | |
| ROBERT R. COOKE, BRETT M. TILLERY, and JOHN DOE 1 through JOHN DOE 10, agents and servants of the Sheriff of Park County Wyoming; and BRADLEY M. ROSS, MEHRAN AZIZIAN, and JOHN DOES 11 through 20, agents and servants of the National Park Service, United States Department of the Interior, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | JURY DEMANDED |

## COMPLAINT

COME NOW the Plaintiffs, by and through their attorney Robert T. Moxley, of

Robert T. Moxley P.C., Cheyenne, Wyoming, and in support of the causes of action alleged

and the claims made herein, respectfully show the Court as follows:

## I. Preliminary Statement

1.      On the 20ᵗʰ day of July, 2017, the Plaintiffs, a family from Independence, Missouri, were on vacation in Yellowstone Park.  On that morning, driving in their family car, the Plaintiffs left Yellowstone through the east gate, and headed east toward Cody, Wyoming on the "North Fork Highway."  Brett Hemry, driving, soon noticed that the family was being closely followed by two Park Service Ranger vehicles.  The Park Ranger vehicles were following so closely that Mr. Hemry decided to pull over, to allow the vehicles to pass, or to ascertain if he was being followed.  When Mr. Hemry pulled over at a location known as the Newton Creek Campground, the Park Ranger vehicles pulled in front of the Hemry family vehicle, to block it from continuing down the highway, and from each vehicle a Park Ranger exited with a drawn firearm in hand.  The family was detained at gunpoint in their vehicle for about a half hour, without notice or knowledge of the Rangers' purpose.  Then, the first of two patrol vehicles from the Park County Sheriff's Office, located in Cody, arrived at the scene; another patrol vehicle arrived about ten minutes later.  The plaintiffs Brett Hemry and his wife Genalyn Hemry were taken from their vehicle at gunpoint by defendant law enforcement officers , handcuffed, and placed into patrol cars.  An armed officer continued to hold the minor child at gunpoint in the family car.  After about an hour of detention, a uniformed officer told Mr. Hemry that a wanted murder suspect was being sought, and because Mr. Hemry and his family had no connection to the suspect, the family

2

was told that they were free to go.  The terrified family went on its way, without receiving

an apology or additional explanation.

## II.  Jurisdiction, Venue, and Parties

1.      This is a civil action seeking money damages against federal officers and state

officers, in their individual capacities, for constitutional torts committed in the scope and

course of their official duties.

2.      The Plaintiffs seek monetary damages (compensatory and punitive) against

defendants, and attorneys fees as provided-for by 42 United States Code § 1988.

3.      There is complete diversity of citizenship between the Plaintiffs and

Defendants, and the amount in controversy exceeds $75,000 excluding interest and costs.

4.      This action is brought against the defendant federal employees in their

individual capacities under *Bivens v. Six Unknown Named Agents of the Federal Bureau of

Narcotics,* 403 U.S. 388 (1971), and under the Constitution of the United States.

5.      This action is brought against state law enforcement officers in their individual

capacities under the Civil Rights Act, 42 United States Code § 1983.

6.      The Court has jurisdiction over this action pursuant to 28 United States Code

§§ 1331 and 1343.

7.      Venue is proper under 28 U.S.C. § 1391 (b) (2) because the causes of action

arose in the District of Wyoming; certain of the defendants also reside in Wyoming.

8.      The Plaintiffs are citizens of the United States, currently domiciled in

Independence, Missouri.

9.      The Plaintiffs Brett Hemry and Genalyn Hemry are the parents of the Plaintiff

f. m. h., a minor child; Brett Hemry and Genalyn Hemry appear in this action on their own

behalf and as the Next Friend of their minor child.

10.     The Defendant Robert R. Cooke II was at all relevant times a law enforcement

officer in the employ of Park County, Wyoming, acting at all relevant times under color of

state law and in the course and scope of his employment as a law enforcement officer under

the auspices of the Park County Sheriff's Department, located in Cody, Wyoming.

11.     The Defendant Brett M. Tillery was at all relevant times a law enforcement

officer in the employ of Park County, Wyoming, acting at all relevant times under color of

state law and in the course and scope of his employment as a law enforcement officer under

the auspices of the Park County Sheriff's Department, located in Cody, Wyoming.

12.     The Defendant Bradley M. Ross was at all relevant times a federal law

enforcement officer in the employ of the National Park Service, acting at all relevant times

under color of federal law and in the course and scope of his employment as a Park Ranger

and law enforcement officer within Yellowstone Park.

13.     The Defendant Mehran Azizian was at all relevant times a federal law

enforcement officer in the employ of the National Park Service, acting at all relevant times

under color of federal law and in the course and scope of his employment as a Park Ranger

and law enforcement officer within Yellowstone Park

4

14.     On information and belief, Plaintiffs allege that the Defendants John Doe 1 through John Doe 10, law enforcement officers in the employ of the Park County Sheriff, acting at all relevant times under color of state law and in the course and scope of their employment as law enforcement officers of the State of Wyoming, acted in concert with or supervised the defendants Rob Cook and Brett Tillery, in the tortious conduct hereinafter described (collectively herein these John Doe defendants along with the defendants Cook and Tillery will be referred-to as the "Park County Sheriff defendants"); their names shall be added to this Complaint as their identities become known.

15.     On information and belief, Plaintiffs allege that the Defendants John Doe 11 through John Doe 20, federal law enforcement officers or other federal employees in the employ of the National Park Service, acting at all relevant times under color of federal law and in the course and scope of their employment as law enforcement officers within Yellowstone Park, acted in concert with or supervised the defendants Brad Ross and Mehran Azizian in the tortious conduct hereinafter described (collectively herein, these John Doe defendants along with the defendants Ross and Azizian will be referred-to as the "Park Service defendants"); their names shall be added to this Complaint as their identities become known.

### III. Facts Common to All Claims

16.     On or about the 20th day of July, 2017, law enforcement authorities in and around Park County and Teton County Wyoming, including local and federal law

enforcement, were (and had been for about a week) in a state of alert concerning a fugitive named Gerald Michael Bullinger, a grey-haired man in his sixties, standing six feet one inch and weighing 240 pounds, wanted for an alleged triple murder in the neighboring state of Idaho.

16.     On the morning of July 20, 2017, the plaintiffs Brett Hemry, his wife Genalyn Hemry, and their seven year-old daughter F.M.H. were on vacation in Yellowstone Park, and were riding in the family car, a 2009 Toyota Venza, with Missouri license plate DN9 F6M.

17.     On July 20, 2017, the plaintiffs were in the family vehicle and were leaving Yellowstone Park through the eastern gates, at about the hour of 8:30 a.m., driving east on the combined route of U.S. Highways 14, 16 and 20, which are collectively known as the "North Fork Highway."

18.     On information and belief, plaintiffs alleges that one of the John Doe Park Service defendants, identify unknown, observed the Hemry vehicle as Mr. Hemry, who has white hair, drove out of Yellowstone Park; this John Doe defendant informed National Park Service authorities that he or she had "spoken with" the wanted murder suspect Bullinger at the east entrance of the park.

19.     On information and belief, plaintiffs alleged that one or more John Doe Park Service defendants caused a report to circulate that the murder suspect Bullinger had been seen traveling in a white Toyota passenger car with plates from an unknown state bearing the number DN9F6M.

6

20.     A dispatch message was sent by the National Park Service to the Park County Sheriff's Department in Cody, Wyoming, at or near the time of 9:11 o'clock on the morning of July 20, 2017, relating that the east entrance of Yellowstone was being shut down so that vehicles could be searched.

21.     The Park County Sheriff's department was told by virtue of the Park Service communication, near the time of 9:11 a.m. on July 20, 2017, to "be on the lookout" (BOLO) for a white Toyota passenger car, state unknown, with a license plate number of DN9F6M.

21.     At 9:13 a.m. on July 20, 2017, the Park County Sheriff's marked patrol vehicle "Unit 1112," believed to be manned by the defendant Tillery, was dispatched and driving on the North Fork Highway, U.S. Highways 14, 16 and 20, toward the east entrance of Yellowstone Park.

23.     At the hour of 9:53 a.m., Park County dispatched the second of two patrol cars, whereby Unit 1113, believed to be the defendant Cooke, was also en route on the North Fork Highway, U.S. Highways 14, 16 and 20, to the east entrance of Yellowstone Park.

24.     Between 10:14 and 10:15 a.m. on July 20, 2017, the Park County dispatch was informed that the plaintiffs' vehicle had "pulled in to Newton Creek Campground," and that "2 Park Rangers are following [the plaintiffs'] until deputies arrive."

25.     Mr. Hemry had observed that two Park Ranger vehicles were following closely behind his family vehicle, and pulled the family vehicle off the North Fork Highway, at approximately 10:00 p.m. on July 20, 2017.

7

26.    As soon as the Hemry vehicle was pulled off the highway, two Park Ranger vehicles, which on information and belief plaintiffs allege were occupied, respectively, by the defendants Ross and Azizian, pulled in front of the Hemry vehicle to block it from moving.

27.    As soon as the Park Ranger vehicles had come to a stop, the defendant rangers quickly stepped out of their vehicles with long guns, and pointed the long guns (*i.e.,* rifles or shotguns) directly at Mr. Hemry, his wife and child, in their vehicle.

28.    Using a loudspeaker to communicate with the Hemry family, while they were held at gunpoint, the Rangers ordered Mr. Hemry to throw the car keys outside on the ground, and the family was ordered to place their hands on the inside roof of the car.

29.    For a period of approximately a half hour the Hemry family was held at gunpoint in their vehicle while they pressed their hands against the inside roof of the car, with no ability to communicate, and no notice of the purpose of the detention.

30.    On information and belief, plaintiffs allege that other National Park Service vehicles, driven by John Doe defendants, soon arrived on the scene, and that defendants among the John Does 1 through 10 participated in the detention and pointed long guns at the plaintiffs, sitting in the family car with their hands on the inside roof.

31.    At or near the hour of 10:21 a.m., the Park County Sheriff's patrol car 1112 arrived at the scene of the detention, and at the hour of 10:30 the second patrol car, unit 1113, also arrived.

32.     The two defendant Park County deputies joined into the detention and also trained firearms upon the Hemry family, holding them at gunpoint without objective justification.

33.     Soon after the arrival of the Park County deputies, one or more of the defendants required the plaintiff Mr. Hemry, at gunpoint, to exit the vehicle and to walk backwards toward an officer who handcuffed Mr. Hemry behind his back, and placed him into the back seat of a law enforcement vehicle.

34.     The plaintiff Genalyn Hemry, also at gunpoint, was required to exit the family vehicle, whereupon she was also handcuffed and placed into detention in a law enforcement vehicle.

35.     For another period of about a half hour, while the plaintiffs Brett Hemry and Genalyn Hemry were detained in separate patrol vehicles, an armed defendant continued to point a long gun at the minor child F.M.H., who remained in the family car.

36.     Finally, after about an hour of detention at gunpoint, Mr. Hemry was allowed to display his identification, and was told by a uniformed officer that a wanted murder suspect was being sought.

37.     Mr. Hemry was shown a picture of the suspect Bullinger, to whom he bore no resemblance, save for the light color of his hair, and at 10:52 p.m. — according to Park County Dispatch records — the incident ended, and the plaintiff family was told that they were free to go.

9

38.     The actions of defendants, and each of them, were taken under circumstances where the defendants had adequate time for deliberation, and in the absence of any danger to defendants or the public.

39.     Prior to being released, and throughout the period of their detention, the plaintiffs were never afforded an opportunity to identify themselves or communicate with officers.

40.     Prior to being released, and throughout the period of their detention, the plaintiffs were never informed of the purpose of the detention.

41.     Prior to being released, and throughout the period of their detention, the plaintiffs were never informed that they were or were not under arrest.

42.     Each of the defendants who participated in the detention of the Plaintiffs violated an affirmative duty to properly and adequately assess the need to seize and detain Plaintiffs, to arrest Plaintiffs, or to employ force against them.

43.     Each of the defendants who participated in the detention of the Plaintiffs violated an affirmative duty to intervene in the actions of other law enforcement officials when such other officials acted in contravention of the constitutional rights, privileges and immunities of the Plaintiffs by subjecting them to unreasonable detention, arrest, and use of force.

44.     Defendants and each of them intentionally deprived plaintiffs of their personal freedom and their constitutional rights by force, threat of force, menace and unreasonable

duress.

45.     The defendants' conduct was carried out intentionally and recklessly, in the absence of sufficient factual information and in violation of known constitutional standards.

46.     By virtue of their law enforcement training, all defendants knew or should have known that their intentional actions and reckless indifference would result in emotional anguish, mental distress, and psychological harm to plaintiffs.

47.     The Plaintiffs, and each of them, suffered fear, fright, pain, suffering, humiliation, mental and emotional distress and anguish, and loss of enjoyment of life.

## IV.  PLAINTIFFS' FIRST CLAIM FOR RELIEF (FALSE ARREST/VIOLATION OF CIVIL RIGHTS)

Plaintiffs reallege each and every allegation of paragraph 1 through 47 herein, as if set forth *in haec verba,* and for their first claim for relief against all defendants, allege as follows:

48.     The Plaintiffs, and each of them, had a clearly established right under the Fourth Amendment of the United States Constitution, at the time of the detention, to be free from seizure of the person in the absence of a warrant, or, if a felony had been committed, in the absence of constitutionally adequate probable cause.

49.     The Park Service Defendants had no lawful authority or jurisdiction to make an arrest or to detain citizens at the location outside of National Park System where the plaintiffs were detained.

50.     The detention of the Plaintiffs by the Park Service defendants constituted an

unreasonable seizure and arrest, initiated in the absence of reasonable suspicion.

51.    The seizure and detention of the Plaintiffs by the Park County defendants was continued for an unreasonable time, and under unreasonable circumstances, in the complete absence of reasonable suspicion or other constitutional justification.

52.    There was no probable cause for the seizure and detention of the plaintiffs by the defendants, which was accomplished in the absence of a judicial warrant or of lawful, constitutional justification.

53.    The seizure of the plaintiffs' persons and detention of the plaintiffs, with the minor child held at gunpoint in the family vehicle, while her parents were detained and handcuffed in police vehicles, constitutes an illegal seizure and unlawful arrest of each plaintiff, in violation of plaintiffs' Fourth Amendment right to be "secure in their persons . . . against unreasonable . . . seizures" of the person.

54.    The plaintiffs, and each of them, suffered damages as the proximate result of the illegal conduct of the defendants in detaining and arresting them.

## V.  PLAINTIFFS' SECOND CLAIM FOR RELIEF (EXCESSIVE FORCE/VIOLATION OF CIVIL RIGHTS)

Plaintiffs reallege each and every allegation of paragraph 1 through 54 herein, as if set forth *in haec verba,* and for their second claim for relief against all defendants, allege as follows:

55.    The Plaintiffs, and each of them, had a clearly established right, privilege and immunity under the Fourth Amendment and Fourteenth Amendments of the United States

Constitution, at the time of the detention, to be free from the use of excessive force against them by law enforcement officers.

56.     The act of pointing a firearm in the direction of another person constitutes the misdemeanor criminal offense of Reckless Endangering, under Wyoming Statute § 6-2-504.

57.     The defendants' act of holding plaintiffs at gunpoint for an extended period was objectively unreasonable, and excessive under the circumstances.

58.     The defendants' actions in pointing deadly weapons at plaintiffs constitute the use of excessive force by defendants in violation of plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution.

59.     The plaintiffs sustained damages in an amount to be proven as trial, as the direct and proximate result of the defendants' violation of plaintiffs constitutional rights.

## VI. PLAINTIFFS' THIRD CLAIM FOR RELIEF (FALSE IMPRISONMENT)

Plaintiffs reallege each and every allegation of paragraph 1 through 59 herein, as if set forth *in haec verba,* and for their third claim for relief against all defendants, allege as follows:

60.     The Plaintiffs, and each of them, had a clearly established right, privilege and immunity under the Fourth Amendment of the United States Constitution, at the time of the detention, to be free from deprivation of liberty in the absence of probable cause or judicial authorization.

61.     The Defendants' actions in depriving Plaintiffs of their liberty constitute false

13

imprisonment, and violation of Plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments.

62.    The plaintiffs sustained damages in an amount to be proven as trial, as the direct and proximate result of the defendants' violation of plaintiffs constitutional rights and attendant false imprisonment.

## VII. DAMAGES

Plaintiffs reallege each and every allegation of paragraph 1 through 62 herein, as if set forth *in haec verba,* and for their damages claims allege as follows:

63.    The continued detention and use of unreasonable force by defendants continued for a long period of time after it would have been obvious to a reasonable person that there was no justification for seizure of the plaintiffs and interference with their liberty.

64.    The defendants' actions were taken in concert, with each defendant acting jointly with all others, with reckless disregard and callous indifference for the known constitutional rights and the personal safety of plaintiffs.

65.    The actions of defendants as complained-of herein are the proximate cause of damages incurred by each of the plaintiffs.

66.    Each plaintiff is entitled to compensatory damages for their loss of freedom, and for their emotional distress, pain and suffering, and loss of enjoyment of life.

67.    By virtue of the defendants' intentional, reckless, and outrageous actions, plaintiffs are entitled to an award of punitive damages

68.    Plaintiffs are entitled as against the defendant state actors, the Park County

Sheriff defendants, to an award of attorneys fees and costs under 42 United States Code §

1988.

WHEREFORE, plaintiffs pray judgment against the defendants, jointly and severally,

for compensatory and punitive damages, in an amount to be determined at trial, for an award

of attorneys fees and the costs of this action, and for such other and further relief as the Court

deems equitable and just.

Respectfully submitted this 19th day of July, 2021.


ROBERT T. MOXLEY #5-1726
ROBERT T. MOXLEY, P.C.
2718 O'Neil Avenue
Post Office Box 565
Cheyenne, WY 82003-0565
(307) 632-1112
Fax: (307) 632-0401
Vaccinelawyer@gmail.com

## JURY DEMAND

Plaintiffs hereby request trial by jury.

Respectfully submitted this 19th day of July, 2021.


ROBERT T. MOXLEY
Attorney for Plaintiffs

15