NICHOLAS VASSALLO
United States Attorney
JEREMY A. GROSS (WY Bar #7-5110)
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY 82003-0668
Telephone: 307-772-2124
jeremy.gross@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| BRETT HEMRY, Individually and as Next Friend of FRANCINE HEMRY; GENALYN HEMRY, Individually and as Next Friend of FRANCINE HEMRY, and FRANCINE HEMRY, a minor child, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 0:21-cv-00136-ABJ |
| v. | ) ) | |
| ROBERT R. COOKE, BRETT M. TILLERY, and JOHN DOE 1 through JOHN DOE 10, agents and servants of the Sheriff of Park County Wyoming; and BRADLEY M. ROSS, MEHRAN AZIZIAN, and JOHN DOES 11 through 20, agents and servants of the National Park Service, United States Department of the Interior, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM IN SUPPORT OF FEDERAL DEFENDANTS' SECOND MOTION TO DISMISS

In support of their second motion to dismiss, the individual federal Defendants Bradley

Ross and Mehran Azizian provide the following:

### I.     Statement of the Case

On or about July 20, 2017, local and federal law enforcement authorities in and around

Park and Teton Counties were in a state of alert concerning a fugitive named Gerald Michael

Bullinger, who was wanted for an alleged triple murder in the neighboring state of Idaho. (Doc.

1, ¶ 15). Bullinger was described as a grey-haired man in his sixties, standing six feet one inch and weighing 240 pounds. (*Id*.). At some time on or about July 20, 2017, an unknown individual reported to the National Park Service that he or she had "spoken with" the wanted murder suspect Bullinger at the East entrance of the park. (*Id*. at ¶ 18). This unnamed person informed the National Park Service that Bullinger had been seen traveling in a white Toyota passenger car with plates from an unknown state bearing the number DN9F6M. (*Id*. at ¶ 19).

During that same time frame, Brett Hemry, Genalyn Hemry, and F.M.H. were on vacation in Yellowstone National Park. (*Id*. at ¶ 16). At about 8:30 a.m. on July 20, 2017, the Hemrys exited the park through the East gate in their 2009 Toyota Venza, Missouri license plate DN9F6M. (*Id*. at ¶¶ 16–17). After leaving the park, Brett Hemry noticed that he was being followed closely by National Park Service rangers. (*Id*. at ¶¶ 1, 25). At approximately 10:00 a.m., Mr. Hemry pulled over at the Newton Creek Campground to allow the rangers to pass or to determine if he was being followed. (*Id*.). As Mr. Hemry pulled off the highway, two park rangers, Defendants Ross and Azizian, pulled in front of his vehicle and blocked it from moving. (*Id*. at ¶ 26).

Plaintiffs allege that the rangers then exited their vehicles and pointed rifles or shotguns at the Hemry vehicle. (*Id*. at ¶ 27). Using a loudspeaker to communicate, the rangers ordered Mr. Hemry to throw his car keys outside of the vehicle and the family was ordered to place their hands on the inside of the roof of the car. (*Id*. at ¶ 28). Over the next half-hour, additional National Park Service and Park County Sheriff's vehicles arrived on scene. (*Id*. at ¶¶ 30–31).

Soon after the Park County deputies arrived, an unnamed Defendant made Mr. Hemry exit the vehicle and walk backwards to another unnamed officer, who then handcuffed Mr. Hemry and placed him in the back of a law enforcement vehicle. (*Id*. at ¶ 33). They repeated this

process with his wife, Genalyn. (*Id*. at ¶ 34). According to Plaintiffs' complaint, Francine Hemry remained in the family car. (*Id*. at ¶ 35). Mr. Hemry was then allowed to display his identification and was informed by an unnamed officer that they were seeking a wanted murder suspect. (*Id*. at ¶ 36). At 10:52 a.m., the incident ended and the Hemrys were told they were free to leave. (*Id*. at ¶ 37).

As a result of this stop, Plaintiffs assert claims against Rangers Ross and Azizian and several "John Doe" Defendants for damages under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) using a variety of Fourth Amendment theories.

## II.   Procedural History

On September 28, 2021, Defendants Ross and Azizian filed a motion to dismiss the complaint. (Doc. 14). That same day, the State defendants filed a motion to dismiss making similar arguments. (Docs. 14, 15). This Court issued an Order granting in part and denying in part those motions. (Doc. 31). In that Order, this Court dismissed all John Doe Defendants. (*Id*.). With regard to the false arrest/false imprisonment claims, the Court granted qualified immunity to the Defendants as to Mr. Hemry, denied qualified immunity as to Mrs. Hemry, and concluded that F.M.H. had not been arrested. (*Id*.). With regard to the excessive-force claims, the Court denied qualified immunity to the Defendants as to all Plaintiffs. (*Id*.).

Defendants Ross and Azizian filed their notice of appeal on January 10, 2022. (Doc. 35). In that appeal, Defendants Ross and Azizian specifically challenged this Court's denial of qualified immunity from Mrs. Hemry's false-arrest claim and both Mr. and Mrs. Hemry's excessive-force claims. (Appellate Case 22-8002, Doc 10110669095, p. 5, 2022 WL 1096917, *5 (C.A.10)). Defendants did not appeal the denial of qualified immunity as to F.M.H.'s

excessive-force claim. (*Id*. at pp. 5, 22 n.6).

The Tenth Circuit Court of Appeals reversed, holding that the rangers had reasonable suspicion to make a *Terry* stop, that their use of firearms during that stop was reasonable, and that Ross and Azizian were entitled to qualified immunity on Mrs. Hemry's false arrest/imprisonment claim, as well as both Mr. and Mrs. Hemry's excessive-force claims. *Hemry v. Ross*, 62 F.4th 1248 (10th Cir. 2023). Thus, the only remaining claim in this case is F.M.H.'s excessive-force claim.

During the pendency of the appeal, the United States Supreme Court issued a decision in *Egbert v. Boule*, 596 U.S. __, 142 S. Ct. 1793 (June 8, 2022), further limiting the application of *Bivens* and demonstrating why this case must be dismissed. This authority was not raised in the appeal to the Tenth Circuit Court of Appeals and the issue is now ripe for decision by this Court.

### III.   Standard of Review

In reviewing a motion for dismissal under Fed. R. Civ. P. 12(b)(6), "a court must accept as true all well-pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party." *Moss v. Kopp,* 559 F.3d 1155, 1159 (10th Cir. 2010). A motion to dismiss for failure to state a claim under Rule 12(b)(6) requires the Court to determine whether a plaintiff has pleaded sufficient facts to state a plausible claim. The United States Supreme Court has instructed:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and internal citations omitted).

In *Iqbal*, the Court explained that two principles frame this standard. First, the Court emphasized that only factual allegations are given weight in the analysis. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Similarly, the Court stated that Fed. R. Civ. P. 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and that "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Per the Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The second principle is that only plausible claims survive. The Court explained as follows:

> Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n]-that the pleader is entitled to relief.

*Id.* at 679 (internal quotation marks and citations omitted). The Supreme Court has been particularly critical of complaints which are vague on specifics and leave defendants with little idea where to begin when seeking to respond to conclusory allegations. *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citing *Twombly*, 550 U.S. at 565 n.10).

## IV.    Analysis

In its more recent *Bivens* case, the Supreme Court emphasized that the judiciary may not extend *Bivens* when "there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1805 (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1858 (2017)). The separation-of-powers concerns that arise when courts "arrogat[e] legislative power" by creating damages remedies,

*Egbert*, 142 S. Ct. at 1803 (quoting *Hernández v. Mesa*, 140 S. Ct. 735, 742 (2020)), prevent the extension of *Bivens* to a new context, whose novelty may in itself be a special factor that forecloses relief. *See id.*

Plaintiff F.M.H.'s remaining *Bivens* claim for excessive-force against Park Rangers for a road-side *Terry* stop presents a new context not previously recognized by the Supreme Court. An expansion of *Bivens* into this new context is a "'disfavored' judicial activity". *Abbasi*, 137 S. Ct. at 1857. Furthermore, because numerous alternative remedies exist in this case, the Supreme Court's caselaw forecloses extension of *Bivens*. *See e.g. Egbert*, 142 S. Ct. at 1806. Accordingly, F.M.H.'s remaining claim against Defendants Ross and Azizian should be dismissed with prejudice.

    A.  <u>Bivens and its progeny</u>

In its 1971 decision in *Bivens*, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Iqbal*, 556 U.S. at 675 (quoting *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)). Since then, the Supreme Court has recognized *Bivens* claims in only three contexts and otherwise "consistently refused to extend *Bivens* to any new context or new category of defendants." *Abbasi*, 137 S. Ct. at 1857 (internal quotations and citations omitted). The three cases in which the Supreme Court implied a remedy are *Bivens*, which concerned a Fourth Amendment claim that drug-enforcement officers entered a home and seized a suspect in that home without a warrant; *Davis v. Passman*, 442 U.S. 228 (1979), which held that the Fifth Amendment gave a remedy to a secretary fired because of her sex; and *Carlson v. Green*, 446 U.S. 14 (1980), which involved an Eighth Amendment claim that jailers failed to treat a prisoner's asthma.

After its 1980 decision in *Carlson*, the Supreme Court has "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernández*, 140 S. Ct. at 743. The Court shifted its approach as it began to "'appreciate more fully the tension between' judicially created causes of action and 'the Constitution's separation of legislative and judicial power.'" *Egbert*, 142 S. Ct. at 1802 (quoting *Hernández*, 140 S. Ct. at 741).

Now, creating a new cause of action under *Bivens* is considered a "significant step under separation-of-powers principles." *Abbasi*, 137 S. Ct. at 1856. Although the Supreme Court allowed lower courts to take that step in the past, it now takes a different approach and holds that "expanding the *Bivens* remedy is . . . a 'disfavored' judicial activity." *Id.* at 1857. When a court expands the *Bivens* remedy, it necessarily "determine[s] that it has the authority . . . to create and enforce a cause of action for damages" and thereby encroaches on an area over which "Congress"—not the Judiciary—has "substantial responsibility." *Id.* Thus, the Supreme Court holds that "the courts must refrain from creating the [*Bivens*] remedy" if "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law." *Id.* at 1858.

In its recent decisions, the Supreme Court has "framed the [*Bivens*] inquiry as proceeding in two steps," *Egbert*, 142 S. Ct. at 1803, asking whether the case presents a new context, and, if so, whether special factors counsel hesitation in extending the *Bivens* remedy, *Hernández*, 140 S. Ct. at 743. But those two steps generally "resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 142 S. Ct. at 1803. Because judicial creation of a damages remedy implicates "the Constitution's separation of legislative and judicial power," *Hernández*, 140 S. Ct. at 741, the Supreme Court

has cautioned that "even a single sound reason to defer to Congress is enough to require a court to refrain from creating such a remedy," *Egbert*, 142 S. Ct. at 1803 (cleaned up).

Given these principles, the Supreme Court has never authorized a Fourth Amendment excessive-force *Bivens* claim against any federal officer. Indeed, it rejected such claims in both *Hernández and Egbert*. In *Hernández*, the Court first held that it was "glaringly obvious," 140 S. Ct. at 743, that a Fourth Amendment excessive-force claim against a Border Patrol agent at the border presents a new context, different from that in *Bivens*, which the Court described as "an allegedly unconstitutional arrest and search carried out in New York City," *id.* at 744. And in *Egbert*, which also involved a Fourth Amendment *Bivens* claim against a Border Patrol agent for excessive-force, the Court held that it did not matter that the agent being sued was not directly at the border, or that the plaintiff's guest had arrived from inside the United States, or that the agent's investigations were focused within the United States and not abroad. It instructed courts not to "apply[] the special-factors analysis at too granular a level," and instead to analyze the broader question whether a cause of action should be created "against Border Patrol agents generally." *Egbert*, 142 S. Ct. at 1806.

Here, the Plaintiffs invite this Court to extend *Bivens* to a new Fourth Amendment context, namely, a claim against National Park Service Rangers for excessive-force used during a roadside *Terry* stop. *Egbert* and other recent Supreme Court precedent, as well as precedent from sister circuits, dictate that this Court decline this invitation.

> B.  Plaintiffs ask this Court to extend *Bivens* to a new context, which is foreclosed by recent Supreme Court precedent.

A case presents a "new context" if it is "different in a meaningful way" from *Bivens*, *Passman*, and *Carlson* or "involves a new category of defendants." *Hernández*, 140 S. Ct. at 743. The "meaningfully different" standard is open-ended: a case may be "meaningfully different"

because of "the statutory or other legal mandate under which the [defendant] officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Abbasi*, 137 S. Ct. at 1860. "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernández*, 140 S. Ct. at 743. As demonstrated in *Hernández* and *Egbert*, even "almost parallel circumstances" or a "similar mechanism of injury" would still indicate a new *Bivens* context. *Egbert*, 142 S. Ct. at 1805.

In *Egbert*, the Supreme Court held that it would not extend the judicially created individual damages remedy recognized in *Bivens* to First and Fourth Amendment claims alleging that a U.S. Border Patrol agent used excessive-force and retaliated against the plaintiff for filing a grievance and administrative claim. The Court emphasized that, in each *Bivens* case, "the most important question is who should decide whether to provide for a damages remedy, Congress or the courts?" *Id.* at 1803 (quoting *Hernández*, 140 S. Ct. at 750). "If there is a rational reason to think that the answer is 'Congress'—as it will be in most every case—no *Bivens* action may lie." *Id.* (citation omitted).

The Supreme Court clarified that the inquiries into (1) whether a case presents a new context, and (2) whether special factors counsel hesitation in recognizing a novel *Bivens* action, both address the same basic question—"whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id; cf. Abbasi,* 137 S. Ct. at 1860. The fact that a case arises in a new context, for example because it implicates a new category of individual defendants, is in itself a special factor that counsels hesitation when it evidences a "situation[] in which a court is not undoubtedly better positioned than Congress to create a damages action." *Id.*

In general, if a court considering an extension of *Bivens* "cannot predict the 'systemwide' consequences of recognizing a cause of action under *Bivens*" in a particular case, then "[t]hat uncertainty alone is a special factor that forecloses relief." *Egbert*, 142 S Ct. at 1803–04 (quoting *Abbasi*, 137 S. Ct. at 1858, and citing *Hernández v. Mesa*, 885 F. 3d 811, 818 (5th Cir. 2018) (en banc)).

Egbert also clarified that when a plaintiff seeks to extend *Bivens* to a new category of defendants, the court must consider the entire class of potential defendants, rather than the individual defendants in the case. Courts "should not inquire . . . whether *Bivens* relief is appropriate in light of the balance of circumstances in the 'particular case[,]'" but should instead "ask '[m]ore broadly' if there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate.'" *Id.* at 1805 (quoting *United States v. Stanley*, 483 U.S. 669, 681 (1987)). The relevant question here, therefore, is "whether a court is competent to authorize a damages action not just against" Ross and Azizian, the Park Rangers sued in this case, "but against [law enforcement Park Rangers] generally." *Id.* at 1806.

A court charged with deciding whether to extend *Bivens* to a new context must weigh such matters as "'economic and governmental concerns,' 'administrative costs,' and the 'impact on governmental operations systemwide.'" *Egbert,* 142 S. Ct. at 1803–04 (quoting *Abbasi*, 137 S. Ct. at 1858). Ordinarily, "Congress is 'far more competent than the Judiciary' to weigh such policy considerations." *Id.* at 1804 (quoting *Schweiker* v. *Chilicky*, 487 U. S. 412, 423 (1988)).

Here, Congress is better suited to determine whether a remedy in damages should be provided against National Park Rangers for excessive-force violations.[1] Plaintiffs' claim for

---

[1] *Egbert* explained that it is immaterial that plaintiff has raised "conventional" constitutional claims, such as a violation of the Fourth Amendment's prohibition against excessive-force. 142 S. Ct. at 1805. Novel factual allegations may create a new context and counsel hesitation even

excessive-force is a new type of Fourth Amendment claim not previously recognized under

*Bivens*, aimed against a new class of defendant, who were engaged in very different law

enforcement activities than those defendants in *Bivens*.

> i.  *The United States Supreme Court has not previously recognized a Bivens
>     claim for excessive-force in this context.*

This case presents a new *Bivens* context simply because it presents a new type of Fourth

Amendment claim not previously held to provide a *Bivens* remedy. In *Bivens*, the petitioner

sought damages from federal narcotics officers for the unreasonable warrantless search of his

home and the seizure of his belongings. *Bivens*, 403 U.S. at 389. While Mr. Bivens did assert

that unreasonable force was used in his arrest, the Court largely ignored this claim, instead

focusing on the violation of his right to privacy under the Fourth Amendment. *Mejia v. Miller*,

61 F. 4th 663, 666 (9th Cir. 2023). Many cases since *Bivens* have recognized this limitation. *See

e.g. Abbasi*, 137 S. Ct. at 1857 (recognizing *Bivens'* continued force "in the search-and-seizure

context in which it arose").

This is significant because the only remaining claim in this case is one for excessive-

force, not a search or seizure violation. This distinction alone demonstrates that the Plaintiffs'

remaining claim presents a new context for *Bivens* litigation. This is not a distinction without a

difference. The principle is plainly illustrated by the facts and result in *Egbert*, where the Court

rejected a Fourth Amendment excessive-force claim "despite its close resemblance to the facts of

*Bivens* itself." *Silva*, 45 F.4th at 1140 (citing *Egbert*, 142 S. Ct. at 1810 (Gorsuch, J., concurring)

---

when *Bivens* and the case before the court both "involve similar allegations of excessive force
and thus arguably present 'almost parallel circumstances' or a similar mechanism of injury.'" *Id.*
(quoting *Abbasi,* 137 S. Ct. at 1859). These "superficial similarities," the Court held, are not
relevant to whether "the Judiciary is comparatively ill suited to decide whether a damages
remedy" is appropriate. *Id.*

("I struggle to see how this set of facts differs meaningfully from those in *Bivens* itself"), and *id.* at 1815 (Sotomayor, J., concurring in the judgment in part and dissenting in part) ("Boule's claim is materially indistinguishable from the claim brought in *Bivens*")). That is, "'similar allegations of excessive force,' 'almost parallel circumstances,' or a 'similar "mechanism of injury"' as [in] *Bivens* 'are not enough to support the judicial creation of a cause of action.'" *Mejia*, 61 F.4th at 668 (quoting *Egbert*, 142 S. Ct. at 1805). Furthermore, *Egbert* is not an anomaly. *See Hernández*, 140 S. Ct. at 743 (denying a *Bivens* remedy for an excessive-force case involving a cross-border shooting death). Thus, even if the Supreme Court did recognize a claim for excessive-force in *Bivens*, they have rejected every subsequent excessive-force claim to come before them because the circumstances or mechanism of injury are different.

While the Plaintiffs would like this Court to look at the current claim under a broad Fourth Amendment lens, the Supreme Court has clearly rejected that approach. *See e.g. Silva*, 45 F.4th at 1140; *see also Mejia*, 61 F. 4th at 668. Analysis of the facts draw this case further and further away from *Bivens*. For example, the alleged excessive-force occurred on the side of a roadway as the result of a valid *Terry* stop, not a warrantless search of a private residence as in *Bivens*. And the reason for the encounter was due to a multi-state search for a murder suspect, not a narcotics investigation. These differences compound in a way that sets this claim apart from *Bivens*, demonstrating why this claim presents a new context.

      ii.  *Employees of the National Park Service operate under a different legal mandate than those in Bivens.*

Another important reason why this case presents a new context for *Bivens* litigation is that Defendants Ross and Azizian operate under a vastly different legal mandate than those defendants in *Bivens*. Because of that different mandate, Ross and Azizian are a different category of defendants, one which have not been historically subject to *Bivens* liability.

In *Abbasi*, the Court noted that it has consistently declined to extend Bivens to a "new category of defendants." 582 U.S. at 135 (quoting *Malesko*, 534 U.S. at 68). And the "statutory or other legal mandate under which the officer was operating" is another factor indicating whether a new *Bivens* context is implicated. *Abbasi*, 137 S. Ct. at 1860; *see also Mejia*, 61 F. 4th at 668 ("The dissent in *Egbert* does not appear to be wrong in inferring the Court now sees a new *Bivens* context even if only the officer's employing agency is different."). The Supreme Court has repeatedly refused to extend *Bivens* to cases involving new kinds of federal officials. *See Chappell v. Wallace*, 462 U.S. 296, 304 (1983) (no *Bivens* against military officers); *Schweiker*, 487 U.S. at 421 (no *Bivens* against Social Security Administration employees); *Egbert*, 142 S. Ct. at 1807 (no *Bivens* against U.S. Customs and Border Protection officer, even for alleged Fourth Amendment violations). Circuit Courts to examine this issue have made the same call. *See e.g. Mejia*, 61 F.4th at 669 (no *Bivens* against Bureau of Land Management official); *Oliva v. Nivar*, 973 F.3d 438, 443 (5th Cir. 2020) (finding new context where case involved "different conduct by different officers from a different agency"), cert. denied, 141 S. Ct. 2669 (2021).

Here, Ross and Azizian are Park Rangers with the National Parks Service, whose mission is to preserve the natural and cultural resources of the National Park System for the enjoyment of the masses. *See* National Park Service Organic Act, 54 U.S.C. §§ 100101 et seq. Their legal mandate is not one of drug enforcement in people's homes like the defendants in *Bivens.* They are an entirely different category of defendant with an entirely different legal mandate. Thus, application of *Bivens* to this class of defendant would require the extension of the doctrine to a new context, a practice that is disfavored today. *Abbasi*, 137 S. Ct. *at* 1857.

C.  <u>The presence of special factors counselling hesitation give this Court ample reason to deny extending a *Bivens* remedy to this new context.</u>

If the case presents a new *Bivens* context, courts next ask whether there are any "'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Abbasi*, 137 S. Ct. at 1848 (quoting *Carlson*, 446 U.S. at 18). As with the first step, this analysis centers on separation-of-powers concerns. In this analysis, "the most important question is who should decide whether to provide for a damages remedy, Congress or the courts?" *Egbert*, 142 S. Ct. at 1803 (quotations omitted). As the Supreme Court explained, "the necessary inference" from this point "is that the [special factors] inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1857-58.

To answer that question, courts consider "whether there is *any* rational reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages remedy to proceed." *Id*. at 1805 (internal quotations and citations omitted). The *Egbert* Court stressed: "[e]ven a *single* sound reason to defer to Congress is enough to require a court to refrain from creating such a remedy." *Id*. at 1803 (emphasis added). The Court emphasized, this analysis "in most every case" should lead to the same result: "no *Bivens* action may lie." *Id*.

Here, special factors counsel against expansion of *Bivens* to this new context, including the presence of alternative administrative and legal remedies. *Egbert* makes it clear that the presence of these special factors forecloses a *Bivens* remedy in the Plaintiffs' case.

      i.  *Egbert underscores that alternative remedial processes, like an agency's administrative grievance procedure, foreclose extending Bivens.*

In addition to *Egbert*'s directive that constitutional considerations disfavor extending *Bivens* to a new context, the Supreme Court also focused particularly on the availability of an alternative remedial process as a way to foreclose a *Bivens* remedy. *Egbert* explains that when

14

Congress or the Executive provide such a remedy, regardless of whether a plaintiff takes advantage of it, the creation of that alternative remedy alone provides reason for the court to refrain from allowing a damages action against the same defendant to move forward. *See Egbert*, 142 S. Ct. at 1804. Because Plaintiffs here had multiple alternative remedies, one of which they exhausted, no *Bivens* claim exists.

*Egbert* reinforces previous holdings that "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Id.* at 1804 (quoting *Abbasi*, 137 S. Ct. at 1858). "Alternative remedial structures can take many forms, including administrative, statutory, equitable, and state law remedies." *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018). In concluding that *Bivens* should not be extended to a Fourth Amendment excessive-force claim, the Court held that "Congress has provided alternative remedies for aggrieved parties in [plaintiff's] position that independently foreclose a *Bivens* action." *Egbert*, 142 S. Ct. at 1806.

Specifically, *Egbert* recognized that the Border Patrol's statutory obligation to control and supervise its employees authorized the agency to implement regulatory grievance procedures. *See id*. at 1806 (citing and quoting 8 U. S. C. § 1103(a)(2)). The agency's implementing regulations, in turn, provide that "[a]ny persons" can lodge a complaint against a Border Patrol agent with the Inspector General of the Department of Homeland Security. *See id*. (quoting 8 C.F.R. § 287.10(b)). The plaintiff in *Egbert* filed such a grievance against the Border Patrol agent he also sued under *Bivens*, "prompting a year-long internal investigation" into the defendant agent's actions. *Id*.

The Supreme Court in *Egbert* held that the administrative grievance procedure was an alternative remedy that barred the action for damages under *Bivens. See id*. at 1806–07. The

Court rejected plaintiff's argument that the administrative process was inadequate to supplant *Bivens* because plaintiff was "not entitled to participate" in the investigation and had "no right to judicial review of an adverse determination" by the agency. *Id*. The purpose of the *Bivens* remedy, it explained, is to deter unconstitutional conduct, and "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at 1807; *see also id.* ("[T]he question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts"). Put another way, "*Bivens* is concerned solely with deterring the unconstitutional acts of individual officers," and an agency's adoption of a disciplinary process reflects the Executive's determination that that process offers "adequate deterrence" to employee misconduct. *Id*. at 1806. (internal citations omitted). The Court concluded in *Egbert* that it had "no warrant to doubt that the [agency's] consideration of [plaintiff's] grievance" against the individual *Bivens* defendant "secured adequate deterrence and afforded [plaintiff] an alternative remedy" that foreclosed the *Bivens* claim. *Id.* at 1807.

The same reasoning applies here to bar Plaintiffs' remaining claim. The Department of the Interior utilizes both regulations and internal administrative processes to review and discipline Park Service employees. National Park Service Rangers are required to comply with all Executive Branch ethics and conduct regulations, 43 C.F.R. § 20.101, to be "familiar with and comply with all Federal statutes, Executive Orders, and regulations" that govern conduct, 43 C.F.R. § 20.103(a), and to "report directly or through appropriate channels to the Office of Inspector General or other appropriate authority matters coming to their attention which do or may involve violations of law or regulations by employees[.]" 43 C.F.R. § 20.103(b).

Should an individual wish to file a complaint against a Park Ranger, the Department of the Interior has provided at least two options. First, the individual could file a complaint with the National Park Service Office of Professional Responsibility at https://www.nps.gov/orgs/1358/submit-a-complaint.htm (last visited September 5, 2023).[2] This site provides interested parties with specific instructions as to how they can file their complaint, providing numerous avenues for complaining and an overview of the process. Rangers are educated on this process through Chapter 16 of their own Ranger Manual. *See* https://www.nps.gov/aboutus/foia/upload/RM-9-redacted-V-2.pdf (last visited September 5, 2023).

Second, should the individual wish to report fraud, waste, abuse, misconduct, or mismanagement, they are encouraged to file a complaint through the Department's Office of Inspector General at https://www.doioig.gov/complaints-requests (last visited September 5, 2023). This site also provides links to more information about the reporter's rights and obligations, as well as the process one can expect. *See id.* at https://www.doioig.gov/complaints-requests/complaint-hotline (last visited September 5, 2023) ("Every day, Interior employees and private citizens from across the Nation reach out to OIG, and the information they share can turn into investigations, inspections, evaluations, or audits with outcomes that result in positive change for the Department, its employees, and the public.").

---

[2] "[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). A court may "take judicial notice of its own files and records, as well as facts which are a matter of public record." *Id*. A federal agency's website is a matter of public record and a "source[] whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *See e.g. Schmidt v. Int'l Playthings LLC*, 536 F. Supp. 3d 856, 922 n.58 (D.N.M. 2021) (taking judicial notice of a United States Consumer Product Safety Commission website for purposes of a 12(b)(6) motion).

What is made clear in *Egbert* is that the provision of these administrative remedies is sufficient to counsel against the creation of a *Bivens* remedy. *Egbert*, 142 S. Ct. at 1807 ("so long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy"). Moreover, as in *Egbert*, it is worth noting that the Plaintiffs here <u>did</u> avail themselves of the Department's grievance process, which led to a full Office of Professional Responsibility investigation.

As the Plaintiffs told the district court, "Mr. Hemry made a timely complaint on July 24, 2017 . . . to the Office of the Inspector General of the Department of the Interior, leading to an investigation in the Office of Professional Responsibility (OPR)." (Doc. 23, ¶ 8).[3] The Office of Professional Responsibility completed its investigation and issued a report on November 3, 2017. (Doc 23-1, p. 3). The OPR report even contains an interview with Brett Hemry conducted by Special Agent John Evans as part of the investigation. (*Id*. at pp. 80–96).

As in *Egbert*, "the consideration of [the Hemrys'] grievance against" Ross and Azizian "secured adequate deterrence and afforded [the Hemrys] an alternative remedy." *Egbert*, 142 S. Ct. at 1807. The Department of the Interior provided an administrative remedy, the Hemrys invoked it, and the courts "cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id*. For this reason, the remaining claim for damages under *Bivens* must be dismissed.

Even without the Department's internal administrative grievance process, Congress has provided an alternative remedy through the passage of the Federal Tort Claims Act (FTCA). This Circuit and others have previously held that the FTCA is sufficient when conducting the special-

---

[3] Even though it was Mr. Hemry that completed the complaint process, he did so on behalf of himself and his family. *See* Doc. 23-1, p. 6 (noting that Mr. Hemry lodged a complaint as to the treatment of himself "and his family" during the encounter).

factors inquiry. For example, in *Williams v. Keller*, No. 21-4022, 2021 WL 4486392, at *4 (10th Cir. Oct. 1, 2021), a Fourth Amendment malicious-prosecution case, the Tenth Circuit Court of Appeals included the FTCA in its listing of alternative remedial structures: "Congress has also established a statutory framework for remedying torts committed by federal officers – the Federal Tort Claims Act (FTCA)." The Fifth Circuit's decision in *Oliva v. Nivar* – like the present case – involved a Fourth Amendment excessive-force claim. Not only did the Fifth Circuit consider the FTCA an "alternative remedial scheme" counseling against extending *Bivens* to excessive-force claims, *Olivia*, 973 F.3d 438, 443–44 (5th Cir. 2020), but the court explicitly held that this was true even if "the FTCA might not give [the plaintiff] everything he seeks." *Id*. at 444. Similarly, the Ninth Circuit has rejected a *Bivens* remedy sought by a prisoner, pointing out that the plaintiff "had alternative processes by which to pursue his claims and remedies," and that, among other things, "he could have sought a remedy * * * under the Federal Tort Claims Act." *Schwarz v. Meinberg*, 761 Fed. Appx. 732, 734-35 (9th Cir. 2019).

Accordingly, both the administrative grievance process and the FTCA provide alternative remedies to *Bivens*, foreclosing extension of a damages remedy here.

> ii. *The fact that this claim presents a new context is also a special factor that counsels hesitation in extending Bivens.*

Simply put, the reasons that this claim presents a new context outlined above are also factors that counsel hesitation in imposing a *Bivens* remedy here. Because the Supreme Court has not extended *Bivens* to excessive-force claims, or to claims against National Park Service rangers, or to claims arising out of valid *Terry* stops, the Court cannot say that it is in a better position than Congress to do so now. *See Egbert,* 142 S. Ct. at 1803. If a court considering an extension of *Bivens* "cannot predict the 'systemwide' consequences of recognizing a cause of action under *Bivens*" in a particular case, then "[t]hat uncertainty alone is a special factor that

forecloses relief." *Id*. at 1803–04 (quoting *Abbasi*, 137 S. Ct. at 1858, and citing *Hernández v. Mesa*, 885 F. 3d 811, 818 (5th Cir. 2018) (en banc)). Here, the systemwide impacts of recognizing a *Bivens* claim in any of these new contexts would cause vast and complex reverberations that Congress is better suited to grapple with than the Judiciary. Authorizing a *Bivens* remedy for *Terry* stops alone opens up a huge number of new claims, including many against new categories of defendants (like Park Rangers), which the Court cannot safely forecast. Accordingly, the Court should not create a new remedy here.

D. <u>Recent *Bivens* litigation involving the Department of the Interior makes it clear that no *Bivens* remedy is available here.</u>

While not binding on this Court, a post-*Egbert* Ninth Circuit panel decision involving *Bivens* claims against Department of the Interior law enforcement offers a strong parallel to the current case. In *Mejia v. Miller*, 61 F. 4th 663 (9th Cir. 2023), Plaintiff Mejia alleged that Bureau of Land Management officer Miller, aiding National Park Service Rangers, used excessive-force while attempting to arrest her near Joshua Tree National Park. *Id*. at 665. During the arrest, Miller fired multiple shots at Mejia, hitting her in the right hand and grazing her head. *Id*. Mejia brought both FTCA and *Bivens* actions against Miller in district court. *Id*. After the district court denied Miller's motion for summary judgment on the *Bivens* issue, he appealed.

Judge Nancy D. Freudenthal, United States District Judge for the District of Wyoming, sitting by designation, wrote the panel opinion reversing the district court. *See generally id.* In applying the *Bivens* framework, the Ninth Circuit held that this case presented a new context for three reasons. *Id*. at 668–69. First, because Interior employees do not share the same mandate "as agencies enforcing federal anti-narcotics law." *Id*. Second, no previous Supreme Court case has recognized an excessive-force claim against a BLM officer. *Id*. And third, unlike *Bivens*, the events did not take place in Mejia's home but rather on public land, in a place where Mejia had

no expectation of privacy. *Id*. The panel further refused to extend *Bivens* to Mejia's case given

the special factors present, including the "systemwide consequences for BLM's mandate to

maintain order on federal lands" and the presence of alternative administrative remedies. *Id*.

It is difficult to imagine a case more directly on point than *Mejia*. The parallels are stark,

and the outcome could not be clearer. This court should follow *Mejia's* lead and dismiss

Plaintiffs' remaining *Bivens* claim with prejudice.

### V.    <u>Conclusion</u>

The Supreme Court has repeatedly and loudly proclaimed that expansion of *Bivens* to

new contexts is a "'disfavored' judicial activity." *Abbasi*, 137 S. Ct. *at* 1857. Allowing Plaintiffs

to proceed with an excessive-force claim against Park Rangers for their conduct during a road-

side *Terry* stop is plainly an expansion of *Bivens*. Furthermore, the presence of an alternative

remedial scheme forecloses expansion of *Bivens* into this new context because it shows that

Congress and the Executive have struck a balance that this Court should not upset. Because the

Plaintiffs have failed to state a claim for relief as to either Defendant, the remaining claim

against Ross and Azizian should be dismissed with prejudice.

Dated this 5th day of September, 2023.

Respectfully Submitted,

NICHOLAS VASSALLO
United States Attorney

By:

JEREMY A. GROSS
Assistant United States Attorney

21